**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| COUNTRYWIDE HOME LOANS, INC., | ) | CASE NO. 5:09MC82 |
| | ) | |
| MOVANT/APPELLANT, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| DANIEL M. McDERMOTT, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| RESPONDENT/APPELLEE. | ) | |
| | ) | |

Before the Court is the emergency motion of Countrywide Home Loans, Inc. ("Countrywide") for a stay pending appeal. (Doc. No. 1.) Respondent/Appellee, the U.S. Trustee, has filed his opposition (Doc. No. 4) and Countrywide has filed a reply (Doc. No. 10). On October 1, 2009, the Court heard oral arguments and the matter is now ripe for determination. For the reasons set forth below, Countrywide's motion is **GRANTED**.

**I. BACKGROUND**

On April 10, 2007, Marlynn Renee O'Neal filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.[1] On May 1, 2007, Countrywide filed a proof of claim and an objection to the confirmation of Ms. O'Neal's Chapter 13 plan. These two documents were filed in error. Due to a computer coding error, Countrywide's records showed Ms. O'Neal as an active borrower even though Countrywide had actually accepted a short-sale satisfaction of Ms. O'Neal's loan approximately 18 months prior to her bankruptcy filing.

---
[1] Bankruptcy Case No. 07-51027.

1

Ms. O'Neal's bankruptcy attorney immediately objected to the proof of claim and the plan objection. When Countrywide learned of its coding mistake, it did not contest the objection to the proof of claim and the objection was sustained. On June 6, 2007, Countrywide also voluntarily withdrew its plan objection.

Eight months later, on February 28, 2008, the U.S. Trustee for Region 9 sued Countrywide, seeking monetary sanctions and an injunction to prevent Countrywide from "engaging in bad faith and abusive practices in connection with its preparation, verification, filing and prosecution of pleadings and proofs of claim in bankruptcy cases[.]" (Complaint, Adv. Proc. No. 08-5031, Doc. No. 1.) The Trustee sought this relief "pursuant to 11 U.S.C. § 105(a), Local Bankruptcy Rule 2090-2[c], and [the bankruptcy court's] inherent equitable powers[.]" (*Id.*).

In March 2008, Ms. O'Neal died. On February 20, 2009, the bankruptcy judge entered an order closing the bankruptcy case, but retaining jurisdiction over the adversary proceeding.[2]

On April 24, 2009, the bankruptcy judge held a trial on the "liability" phase of the adversary proceeding and, on May 1, 2009, the court issued a Memorandum Opinion finding that "Countrywide's conduct [in connection with the proof of claim and plan objection] was not reasonable, was reckless and [was] sanctionable pursuant to § 105 [of the Bankruptcy Code] and [Federal Rule of Bankruptcy Procedure] 9011." (Adv. Proc. No. 08-5031, Doc. No. 84, at 22.)[3]

On May 11-12, 2009, the bankruptcy judge conducted the "remedial" phase of the adversary proceeding. On July 31, 2009, the court entered a Memorandum Opinion and an Entry

---

[2] On May 27, 2008, Countrywide had filed a motion to dismiss the adversary proceeding, but that motion was denied on September 22, 2008.

[3] The Trustee had not requested sanctions under Rule 9011, but rather under Bankruptcy Local Rule 2090-2(c).

of Judgment sanctioning Countrywide by ordering it and its successors and/or assigns: (a) to immediately begin submitting a four-page Worksheet, created by the bankruptcy judge, whenever Countrywide submits a proof of claim in a case before that judge; and (b) to, within 75 days of the date of judgment, file the same Worksheet as a supplement to all proofs of claim Countrywide had filed in previous cases pending on that judge's docket. The bankruptcy judge further ordered:

> If Countrywide, its successors and/or assigns fail to use and properly complete the Worksheet in support of their claims, the Court will award monetary sanctions against Countrywide, its successors and/or assigns, including, but not limited to, a minimum of $300 for attorney's fees incurred by the debtor or trustee in contesting the claims of Countrywide, its successors and/or assigns, as well as any other compensatory damages that the debtor might prove.

(Adv. Proc. No. 08-5031, Doc. No. 98, at 10.)

On August 10, 2009, Countrywide timely filed its appeal from the May 1 and July 31, 2009 Memorandum Opinions and the Judgment Entry. It also filed a Notice of Election to Appeal to the District Court, a Motion for Stay Pending Appeal, and a Request for Expedited Hearing with Respect to the Motion for Stay Pending Appeal.

An expedited hearing was granted by the bankruptcy judge and the motion to stay was thereafter taken under advisement. Sanctions were abated until August 31, 2009. On September 4, 2009, the bankruptcy court denied the motion for stay, one day after Countrywide filed the instant emergency motion for stay pending appeal.[4]

---

[4] The appeal was not filed until September 11, 2009. (*See* Case No. 5:09cv2106.) Between September 3 and September 11, 2009, Judge Boyko, the district judge originally assigned to the instant miscellaneous case, conducted some proceedings. Eventually, he transferred the case to the undersigned, since it is related to the pending appeal.

## II. DISCUSSION

**A. The Legal Standard**

"It has always been held, [. . .] that, as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 9-10 (1942) (footnote and citation omitted). "The authority to hold an order in abeyance pending review allows an appellate court to act responsibly." *Nken v. Holder*, 129 S.Ct. 1749, 1757 (2009).[5] "The ability to grant interim relief is accordingly not simply '[a]n historic procedure for preserving rights during the pendency of an appeal,' [. . .] but also a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process." *Id.* (quoting *Scripps-Howard*, 316 U.S. at 15).

> "A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian R. Co.*, 272 U.S., at 672, 47 S.Ct. 222. It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.*, at 672-673, 47 S.Ct. 222; *see Hilton*, *supra*, at 777, 107 S.Ct. 2113 ("[T]he traditional stay factors contemplate individualized judgments in each case"). The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion. *See, e.g.*, *Clinton v. Jones*, 520 U.S. 681, 708, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); *Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936).
>
> The fact that the issuance of a stay is left to the court's discretion "does not mean that no legal standard governs that discretion .... '[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' " *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005) (quoting *United States v. Burr*, 25 F.Cas. 30, 35 (No. 14,692d) (CC Va. 1807) (Marshall, C.J.)).

---

[5] In *Nken*, the Supreme Court discussed at length the difference between a preliminary injunction and a stay. The case dealt with an alien subject to a deportation order from the Board of Immigration Appeals ("BIA"). The alien sought a stay of the order, but the government objected, arguing that, under 8 U.S.C. § 1252(f), "no court shall enjoin the removal of any alien pursuant to a final order [. . .] unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." The government opposed application of the more lenient standard applicable to stays. The Court, however, noted that injunctions and stays "serve different purposes[,]" and that an injunction "direct[s] the conduct of a particular actor, [whereas] a stay operates upon the judicial proceeding itself." *Nken*, 129 S.Ct. at 1757-58.

> As noted earlier, those legal principles have been distilled into consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, *supra*, at 776, 107 S.Ct. 2113.

*Nken*, 129 S.Ct. at 1760-61.

**B. The Parties' Arguments**

From a procedural standpoint, it is important to note that what is currently before the Court in this miscellaneous case is an independent request for a stay pending appeal. It is not an appeal from the bankruptcy court's own denial of the motion for stay made before that court. That order has not been appealed.[6] Rather, this Court is being asked to exercise its discretion to grant a stay, *not* to review whether the bankruptcy court abused its discretion in denying the stay.

In its emergency motion for a stay pending appeal, Countrywide asserts that it meets all four factors for entry of a stay of the bankruptcy court's order pending appeal of that order.

**1. Likelihood of success on the merits**

First, Countrywide argues that it is likely to succeed on the merits of its appeal from the orders of the bankruptcy court imposing sanctions for several reasons: (1) because the bankruptcy court's judgment was predicated upon extra-judicial sources and not on the evidence

---

[6] The original emergency motion for stay pending appeal (Doc. No. 1) was filed before the bankruptcy court ruled on a similar motion filed in that court. The U.S. Trustee appears to argue in his opposition to the emergency motion that this Court's task is to review for abuse of discretion the bankruptcy court's order denying the stay. Countrywide addresses this issue in its reply brief, although insisting that the procedural posture of this miscellaneous case requires that this Court exercise its own discretion to separately decide whether to issue a stay. The Court believes that Countrywide has the correct position. This Court is not sitting to review the bankruptcy court's denial of a stay, since Countrywide has not sought such relief and the U.S. Trustee, obviously, would not.

5

properly admitted at the trial; (2) because the properly admitted evidence does not support sanctions under 11 U.S.C. § 105(a); (3) because sanctions could not be imposed under Bankruptcy Rule 9011; (4) because there was no basis for injunctive relief; and (5) because the bankruptcy court lacked subject matter jurisdiction to enter the judgment.

The U.S. Trustee argues in opposition that (1) the remedial order falls squarely within the bankruptcy court's authority under 11 U.S.C. § 105(a) to take action to insure proper implementation of the Bankruptcy Code and Rules; (2) there was sufficient evidence of record to warrant remedial action by the bankruptcy court; (3) Countrywide was on notice as to possible sanctions under Bankruptcy Rule 9011; and (4) subject matter jurisdiction should not be revisited because it was addressed by another district judge in an earlier miscellaneous case. (*See*, J. Gwin, No. 5:08mc43, Doc. No. 9).

### 2. Irreparable harm

Second, Countrywide asserts that it will suffer irreparable harm if a stay is not granted because it will be required "to implement a new protocol tailored specifically for cases pending before a single bankruptcy judge." (Motion at 16.) It argues that the cost of such implementation will not be recoverable from either the U.S. Trustee or any borrower and, although not prohibitive from a dollar standpoint, will put Countrywide at a significant competitive disadvantage because it will be the only mortgage servicer in a highly competitive market required to use the Worksheet. Countrywide points out that the Sixth Circuit has held that "the loss of fair competition" can constitute irreparable harm. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511-12 (6th Cir. 1992). The Sixth Circuit has also held that burdensome administrative practices that result in a competitive disadvantage constitute irreparable harm supporting a stay.

*Grutter v. Bollinger*, 247 F.3d 631, 633 (6th Cir. 2001) (holding that having to create and apply a new admissions policy to comply with an injunction would so delay the process of admissions that the enjoined university would suffer diminished ability to compete with other selective schools for highly qualified applicants absent a stay). Further, magnitude of the injury alone is not determinative. Irreparable injury must be balanced against the likelihood of success on the merits. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) ("[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay[ ]"). "[However], even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, 'serious questions going to the merits.'" *Id.* at 153-54 (citing *In re DeLorean*, 755 F.2d 1223, 1229 (6th Cir. 1985), quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

The U.S. Trustee asserts in opposition that Countrywide will not suffer irreparable harm because economic loss cannot constitute such harm and, even if it could, the amounts here are trivial when considered against Countrywide's entire financial picture.

### 3. Harm to the U.S. Trustee and the public interest

Third, Countrywide points out that the U.S. Trustee will not be harmed if a stay is granted and "any conceivable risk of harm is significantly mitigated by the numerous initiatives Countrywide has implemented to improve mortgage servicing of its customers in bankruptcy and which were [. . .] recognized in the [bankruptcy court's] July 31 Memorandum Opinion." (Motion at 18.) Countrywide also argues that granting the stay would actually serve the public

interest which "favors using the ordinary rulemaking process, with all of the attendant procedural safeguards, to impose new rules of practice and procedure." (Motion at 19.) Relative to this argument, Countrywide asserts that by requiring it to submit with each proof of claim (Official Bankruptcy Form 10) a completed Worksheet created by the bankruptcy court, that court has short-circuited the rule-making process and has exceeded its authority under Bankruptcy Rule 9029.

The U.S. Trustee argues that he appears in this case as an officer of the Justice Department, which acts as a "watchdog" of the public interest, and that the public interest will be served by requiring Countrywide "to comply with the bankruptcy court's order to provide precise information in proofs of claim without further delay." (Opposition at 16-17.)[7]

**C. Analysis**

At this juncture, it is difficult to say for sure whether Countrywide is likely to succeed on the merits of its claim in the bankruptcy appeal. However, what the Court can say with certainty is that very compelling arguments have been made by Countrywide for the proposition that the bankruptcy judge exceeded her authority under any statute and/or federal or local bankruptcy rule to require Countrywide to use a Worksheet that arguably amounts to an improper judicial amendment/revision of Official Bankruptcy Form 10. If Countrywide prevails

---

[7] The U.S. Trustee asserts that Countrywide is incapable of monitoring itself. In support, he points to an example of a proof of claim filed on September 3, 2009 by Countrywide in another bankruptcy case (No. 09-53318), which was not accompanied by the Worksheet. This filing was withdrawn after the Trustee's counsel brought the omission to Countrywide's counsel's attention. At the oral argument, two additional examples were pointed out and, in one case, it was noted that the proof of claim had yet to be withdrawn. (Case Nos. 09-53277 and 07-50413). With respect to that latter claim (No. 07-50413), Countrywide's counsel indicated that there would be no withdrawal because the proof of claim had been filed at the bankruptcy court's specific request. Following the oral arguments, counsel jointly stipulated to the admission of Appellee's Exhibits 1, 2 and 3 (copies of the proofs of claim) and Appellant's Exhibits A, B, C and D (copies of a bankruptcy court order, the two withdrawals, and a declaration by one of Countrywide's Vice Presidents). All of these exhibits have been taken under consideration by this Court.

on this argument, then it will prevail on its appeal, i.e., it will succeed on the merits. However, to make that determination, this Court needs an appropriate amount of time in order to "responsibly fulfill [its] role in the judicial process." *Nken*, 129 S.Ct. 1757.

In that procedural posture, if a stay is not granted and Countrywide ultimately prevails on its appeal, irreparable harm will have been suffered by Countrywide for the reasons it has argued.

Moreover, since this Court is committed to resolving the bankruptcy appeal as soon as possible after the briefing is complete,[8] the Court is hard-pressed to see how anyone other than Countrywide will suffer harm. This is particularly true if the Court ultimately concludes that the bankruptcy court exceeded its authority, in which case failure to issue the stay will actually result in harm to the public interest.

On balance, the Court concludes, in its discretion, that a stay is necessary to preserve the status quo while the Court undertakes the necessary analysis of the issues in the bankruptcy appeal.

### III. CONCLUSION

For the reasons set forth above, Countrywide's emergency motion for stay pending appeal (Doc. No. 1) is **GRANTED**. The bankruptcy court's order of July 31, 2009 is **STAYED** pending this Court's resolution of the appeal in Case No. 5:09CV2106. A copy of this Memorandum Opinion and Order shall be forthwith transmitted to the bankruptcy court. Further, for purposes of the record in the appeal case, the Court directs the Clerk to file a copy of this

---

[8] Briefing will be complete in the bankruptcy appeal by November 23, 2009.

Memorandum Opinion and Order in Case No. 5:09CV2106. This closes the instant case, with each party to bear its own costs.

**IT IS SO ORDERED**.

Dated: October 7, 2009

                                        **HONORABLE SARA LIOI**
                                        **UNITED STATES DISTRICT JUDGE**